UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **JOSEPH HEBERT JR ET AL** | **CASE NO. 3:20-CV-01615** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **ALLIANCE OUTDOOR PRODUCTS INC ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 96] filed by Defendants, Northern Tool & Equipment Company, Inc. ("Northern Tool") and Sportsman's Guide, LLC ("Sportsman's Guide") (collectively, "Defendants"). Plaintiffs, Joseph Hebert, Jr. ("Hebert") and Tracy Hebert ("Mrs. Hebert") (collectively, "Plaintiffs"), filed an Opposition [Doc. No. 104], to which Defendants filed a Reply [Doc. No. 105].

For the reasons set forth below, **IT IS ORDERED, ADJUDGED, AND DECREED** that the Motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.  FACTS AND PROCEDURAL BACKGROUND

This case arises from Hebert's alleged fall from an X-Stand Silent Adrenaline climbing treestand ("treestand"). Alliance Outdoor Products, Inc. ("AOP"), a Co-Defendant[1] in this matter, manufactured the treestand.[2] AOP packages the treestand in a sealed box, and each packaged treestand contains a set of written instructions and a safety video for consumers to review.[3] AOP then sold and shipped the treestands to Sportsman's Guide.[4] Sportsman's Guide sold the

---

[1] AOP did not join this Motion, so the use of the term of "Defendants" does not include AOP. Additionally, any rulings made herein shall not affect the claims alleged by Plaintiffs against AOP.

[2] [Doc. No. 96-6, ¶ 2].

[3] [Doc. No. 96-1].

[4] [*Id.*].

packaged treestands through its online store.[5] At no point in this process did Sportsman's Guide have the ability to control or influence the design, manufacturing, construction, or quality of the treestand.[6]

On or about September 24, 2018, Hebert purchased the treestand from Sportsman's Guide's online store.[7] Hebert received the treestand approximately a week later.[8] Hebert unboxed the treestand and confirmed that all the parts for the treestand were delivered.[9] He also reviewed the written instructions and the safety video.[10] Upon observing the treestand, Hebert found no apparent defects, but Hebert testified that he "didn't know what else to inspect" closely besides the chains on the stand.[11]

Hebert used the treestand without issue approximately fourteen times.[12] However, on January 3, 2020, Hebert alleges that his treestand broke while he was using it, resulting in him falling from a tree.[13] According to the petition, he sustained injuries from the fall.[14] After the incident, Hebert inspected the treestand and determined that the right arm assembly was missing welds.[15] Hebert maintains that the missing welds were not apparent prior to the incident.[16]

On December 11, 2020, Plaintiffs filed suit in this Court.[17] Neither Sportsman's Guide nor Northern Tool received notice of the alleged defect or an opportunity to repair said defect prior to the filing of this lawsuit.[18] Defendants now assert several grounds for summary dismissal

---

[5] [Doc. No. 96-6, ¶ 5].
[6] [*Id.*, ¶ 4].
[7] [*Id.*, ¶ 1].
[8] [*Id.*].
[9] [*Id.*, ¶ 6].
[10] [*Id.*].
[11] [*Id.*]; [Doc. No. 96-3, Deposition of Joseph Hebert, Jr., p. 87, lines 10-25].
[12] [Doc. No. 96-6, ¶ 7].
[13] [*Id.*, ¶ 8].
[14] [*Id.*, ¶ 8]; [Doc. No. 1].
[15] [Doc. No. 96-6, ¶ 9].
[16] [Doc. No. 104, p. 2].
[17] [Doc. No. 1].
[18] [Doc. No. 96-6, ¶ 10].

of Plaintiffs' claims against them.[19] First, Defendants assert that they are non-manufacturing sellers and thus cannot be held liable under the Louisiana Products Liability Act ("LPLA"). Second, Defendants urge that Plaintiffs' redhibition claim should be dismissed because 1) the defect was readily apparent at the time of the sale and 2) Defendants, as good faith sellers, did not receive the notice and opportunity to repair to which they were entitled. Defendants also assert that, if a redhibition claim is viable, any accordant damages are limited to economic loss. Finally, Defendants argue that Mrs. Hebert's loss of consortium claim depends on the products liability claim, so the claim fails as a matter of law when asserted against them.

Plaintiffs do not contest that the Defendants are non-manufacturing sellers that are not liable under the LPLA.[20] Nor do they proffer evidence demonstrating that the Defendants knew or should have known of the treestand's defects or that the Defendants were negligent with respect to either the sale or distribution of the treestand.[21] However, Plaintiffs argue that Defendants are liable under the Redhibition claims for all recoverable damages.

The issues are briefed, and the Court is prepared to rule.

**II.   LAW AND ANALSYIS**

    **A.   Summary Judgment Standard**

Under FED. R. CIV. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the

---

[19] [Doc. No. 96].
[20] [Doc. No. 104, p. 1, 3].
[21] [*Id.*, p. 1].

existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(c)(1). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (*citing Anderson*, 477 U.S. at 248). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). No genuine dispute as to a material exists when a party fails "to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state.

### B. LPLA

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52. Here, the Plaintiffs do not contest that the Defendants are "non-manufacturers" and do not contend that these Defendants are liable under the LPLA. Defendants have thus met their burden of establishing that no evidence or factual dispute supports Plaintiffs' LPLA claims against them.

Accordingly, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that, to the extent Plaintiffs' Complaint can be construed as raising LPLA claims against Sportsman's Guide and Northern Tool, such claims are **DISMISSED WITH PREJUDICE**.

### C. Loss of Consortium

Mrs. Hebert brought a loss of consortium claim for damages pursuant to the Plaintiffs' LPLA and negligence claims. The LPLA claims have been dismissed against Defendants in this Motion. Because the loss of consortium claim depended on those original claims to be viable, that claim now fails as a matter of law as applied to Defendants.

Further, Plaintiffs have not proffered evidence that Defendants were negligent in any respect with regard to either the sale or distribution of the treestand.[22] Because there are no negligence claims asserted against these Defendants, the loss of consortium claim based on the Plaintiffs' negligence claim fails as a matter of law as applied to these Defendants.

Accordingly, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that, to the extent Plaintiff's Complaint can be construed as raising loss of consortium claims against Sportsman's Guide and Northern Tool, such claims are **DISMISSED WITH PREJUDICE**.

---

[22] [Doc. No. 104, p. 1].

5

### D. Redhibition

Under Louisiana law, a seller "warrants the buyer against redhibitory defects … in the thing sold." La. C.C. Art. 2520. Here, Defendants argue that Plaintiffs' redhibition claims fail as a matter of law because (1) the defect was apparent at the time of the sale and (2) Plaintiffs failed to provide the required notice and opportunity to repair. Alternatively, Defendants move this Court to reduce the damages for the redhibition claim to economic loss only. The Court shall address each in turn.

#### a. Apparent

"To determine whether a defect is apparent, courts consider whether a reasonably prudent buyer … would discover it through a simple inspection." *Spraggins v. Lambeth*, 973 So. 2d 165 (La. App. 2d Cir. 2007) (citing *Stuck v. Long,* 40,034 (La.App.2d Cir.8/17/05), 909 So.2d 686, *writ denied,* 05–2367 (La.3/17/06), 925 So.2d 546, *citing Amend v. McCabe,* 95–0316 (La.12/1/95), 664 So.2d 1183). "A simple inspection is more than a casual observation; it is an examination of the article by the buyer with a view of ascertaining soundness." *Id*.

Here, neither party contests that a redhibitory defect existed. However, Defendants assert that the Plaintiffs do not have a viable redhibition claim because the defect was apparent. Defendants maintain that the defect was apparent because Hebert was able to observe the missing arm welds in his post-accident inspection.[23] Defendants further assert that the warnings on the treestand package adequately instructed viewers as to the importance of a thorough inspection.[24] Finally, Defendants urge that Hebert had extensive hunting experience and had been using climbing treestands for approximately thirty years.[25] Therefore, Defendants conclude that

---

[23] [Doc. No. 96-1, p. 15-16].
[24] [*Id*., p. 16].
[25] [Doc. No. 105, p. 3]; [Doc. No. 104-1, Deposition of Joseph Hebert, Jr., p. 63, lines 2-15].

Hebert was not an untrained user and would have discovered the defect had he thoroughly inspected the treestand.[26]

In response, Plaintiffs assert that the fall itself led to Hebert discovering the welds and that the defect would have not been readily apparent prior to the accident.[27] When he received the treestand, Hebert opened the box, ensured that all parts for the treestand had been delivered, and inspected the product.[28] However, Hebert testified that he "didn't know what else to inspect" closely besides the chains on the stand.[29] Plaintiffs offer the testimony of Jeremy Hoffpauir, PE ("Hoffpauir"), a licensed mechanical engineer, to support their argument that the defect would not have been apparent to Hebert.[30] Hoffpauir testified that, while the defect may have been apparent to an engineer "or someone like me that's inspected these [treestands] over and over and have seen various failures", the defect would not have been as readily apparent to an untrained user.[31] Plaintiffs also argue that, had the defect been apparent to Hebert, he would not have used the treestand.[32]

The Court finds that a genuine dispute of material exists as to whether the defect was apparent. Hebert maintains he inspected the treestand after receiving it and that the defect was not apparent at that time.[33] He also read the instructions,[34] which contained numerous warnings and admonitions to inspect the product and to not use it if any such defects were present, and he used the product on multiple occasions.[35] Additionally, Plaintiffs proffered expert testimony that

---

[26] [Doc. No. 105, p. 4].
[27] [Doc. no. 104, p. 4].
[28] [Doc. No. 104-2, Affidavit of Joseph Hebert, Jr., ¶ 2].
[29] [Doc. No. 96-3, Deposition of Joseph Hebert, Jr., p. 87, lines 10-25].
[30] [Doc. No. 104-3, Deposition of Jeremy Hoffpauir].
[31] [*Id.*, p. 219, lines 9-25; p. 220, lines 1-8].].
[32] [Doc. No. 104, p. 5].
[33] [Doc. No. 104-2, Affidavit of Joseph Hebert, Jr., ¶ 2].
[34] [Doc. No. 104-2, Affidavit of Joseph Hebert, Jr., ¶ 2].
[35] [Doc. No. 96-6, ¶ 7].

the defect would not have been readily apparent to an untrained user.[36] Certainly, Hebert had extensive experience using treestands, but this experience does not necessarily translate into experience inspecting these products. Design differences abound in treestands available on the market. In fact, Hoffpauir explicitly testified that numerous joints on this treestand were missing the same welds, making it unlikely that an untrained customer would be able to discover the defect.[37] Therefore, experience using treestands does not necessarily mean that Hebert would have noticed a difference in the construction of the treestand at issue here and attributed such a difference to a defect.

Finally, the mere fact that Hebert discovered the defect after his accident does not mean that the defect was apparent to a reasonably prudent buyer at any point earlier. When Hebert conducted the post-accident inspection, he did so with the knowledge that something was wrong with the product. In other words, even if a reasonably prudent buyer may have noticed "missing" welds in an initial inspection of the product after the purchaser, a buyer, especially an untrained one, could attribute those welds to a design decision. Nothing in the warnings explicitly advised the buyer as to the number of welds that must be present on each arm. Hebert has consistently maintained that the missing welds were not apparent until he conducted another inspection after the fall. A jury could reasonably find, in these circumstances, that this defect was not apparent to Hebert until after the accident. The testimony from Hebert and his expert demonstrates the existence of a factual dispute as to whether a reasonably prudent buyer, acting under similar circumstances, would have discovered the defect after conducting a simple inspection.

Accordingly, to the extent Defendants move this Court to find that the defect was apparent at the time of the sale, the Motion is **DENIED**.

---

[36] [Doc. No. 104-3, Deposition of Jeremy Hoffpauir, p. 219, lines 21-25, p. 220, lines 1-8].
[37] [*Id.*].

### b. Notice and Opportunity to Repair

"A seller who did not know that the thing he sold had a defect is considered a 'good faith seller.'" *Modicue v. Prince of Peace Auto Sale, LLC*, 328 So. 3d 1239,1248 (La. App. 2 Cir. 9/22/21); *Stuck v. Long*, 40,034 (La. App. 2 Cir. 8/17/05), 909 So. 2d 686, *writ denied*, 925 So. 2d 546 (La. 3/17/06). In contrast, "a seller is in bad faith when he knows of the defect in the property that is the subject of the sale but fails to advise the purchaser of the problem." *Royal v. Cook*, 984 So. 2d 156, 165 (La. App. 4th Cir. 2008), *writ denied*, 992 So. 2d 941 (La. 2008).

Where a seller is in good faith, the buyer must notify the seller of the existence of the redhibitory defect, and such notice "must be sufficiently timely as to allow the seller the opportunity to make the required repairs." La. C.C. Art. 2522. The good faith seller may reduce the warranty "to the extent the seller can show that the defect could have been repaired or that the repairs would have been less burdensome, had he received timely notice." *Id*. If a buyer does not provide notice and an opportunity to repair to a good faith seller, the buyer is not entitled to a recission of the sale and may instead receive only a reduction of the price. *David v. Thibodeaux*, 916 So. 2d 214, 219 (La. App. 1 Cir. 5/11/05), writ denied, 922 So. 2d 545 (La. 1/27/06).

Northern Tool and Sportsman's Guide argue that they are good faith sellers and were entitled to notice and an opportunity to repair. Defendants maintain that Plaintiffs did not provide notice of the defect or an opportunity to repair prior to filing suit. Therefore, Defendants urge that Plaintiffs do not have a viable redhibition claim. In response, Plaintiffs argue that the Defendants were provided with notice of the defect at the time they were served with the complaint, and they never requested an opportunity to repair. Therefore, Plaintiffs maintain that they have a viable redhibition claim.

The Court finds that Defendants are good faith sellers. Plaintiffs produced no evidence demonstrating that the Defendants either knew or should have known of the defect, and Defendants maintain that they lacked such knowledge. Because Defendants had no knowledge of the defect, they are good faith sellers. As good faith sellers, Defendants were entitled to notice and an opportunity to repair. Neither party contests that the only notice received by Defendants was the filing of the instant suit. The Court must thus determine whether initiating litigation satisfied Plaintiffs' obligation to timely notify Defendants and offer them an opportunity to repair.

Ultimately, the Court finds that commencing litigation does not constitute timely notice and an opportunity to repair. In *David*, the buyer did not notify the seller of the defect in the home prior to initiating litigation. *David v. Thibodeaux*, 916 So. 2d at 217-19. The appellate court found that notice through litigation was insufficient because "the codal provisions … and jurisprudence suggest that notice must be given *before* rescission is sought, in other words, *before* suit is filed." *Id*. at 219, n. 3 (emphasis original). This is so because a good faith seller may not realistically conduct a repair "without the possibility of admitting liability or undermining his defense" once litigation has started. *Id*.

Those same principles apply here. Plaintiffs did not notify Defendants of the defect prior to filing suit. Defendants thus did not have an opportunity to repair or remedy the defect until after litigation had commenced. If Defendants were to undertake a repair now, they would essentially have to forego their notification defense and admit liability. Because the only notice received in this case was the commencement of this action, the Court finds that Defendants did not receive timely notice and an opportunity to repair. This does not mean the redhibition claims fail as a matter of law. This finding merely means that Plaintiffs are limited in the remedies

available to them. More specifically, Plaintiffs are only entitled to a reduction in price and not recission of the sale.

Accordingly, to the extent Defendants move for this Court to find that Plaintiffs did not provide Defendants with notice and an opportunity to repair, the Motion is **GRANTED**. However, to the extent Defendants move this Court to find that the failure to provide notice and an opportunity to repair entitles them to dismissal of the Plaintiffs' redhibition claims, the motion is **DENIED**.

### c. Available Damages

A seller in good faith "is only bound to repair, remedy, or correct the defect." La. C.C. Art. 2531. If a seller cannot fulfill these obligations, the seller must return the purchase price with interest and reimburse the buyer "for the reasonable expenses occasioned by the sale, as well as those incurred to the preservation of the thing, less the credit to which the seller is entitled if the use made of the thing … were of some value to the buyer." *Id*. Additionally, a buyer is not entitled to recover attorney's fees from a good faith seller. *Pratt v. Himel Marine, Inc*., 823 So. 2d 394, 408 (La. App. 1st Cir. 2002). Nor is a buyer entitled to receive general damages from a good faith seller. *Modicue v. Prince of Peace Auto Sale, LLC*, 328 So. 3d 1239, 1249 (La. App. 2 Cir. 9/22/21). Finally, as discussed above, if a buyer does not provide notice and an opportunity to repair to a good faith seller, the buyer is not entitled to a recission of the sale and may instead receive only a reduction of the price. *David*, 916 So. 2d at 219 (La. App. 1 Cir. 5/11/05). The buyer shall also suffer a "diminution of the warranty to the extent the seller can show that the defect could have been repaired." La. C.C. art. 2522.

Here, Defendants assert that the Plaintiffs' damages should be limited to economic damages only. However, Plaintiffs seek to recover all damages allowed under La. C.C. Art. 2520. The Court must thus determine what damages are available to Plaintiffs.

The Court finds that Plaintiffs may only seek certain economic loss damages. Because Defendants are good faith sellers, Plaintiffs may not receive attorney's fees or general damages. Further, because Plaintiffs did not provide Defendants with notice and an opportunity to repair, Plaintiffs are not entitled to recission of the sale of the treestand. Instead, Plaintiffs may only seek a reduction of price. Defendants may reduce damages to the extent they can demonstrate they could have repaired the defect if they received notice.

Accordingly, to the extent Defendants move to dismiss redhibition claims for personal injury damages or attorney fees, the Motion is **GRANTED**. Plaintiffs' recovery is limited to a return of the purchase price, plus interest, and any reasonable expenses any reasonable expenses occasioned by the sale.

### III. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendants' Motion for Summary Judgment [Doc. No. 96] is **GRANTED IN PART** and **DENIED IN PART.** To the extent Defendants move to summarily dismiss Plaintiffs' LPLA and loss of consortium claims against Sportsman's Guide and Northern Tools, the Motion is **GRANTED**, and such claims are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that, to the extent that Defendants move to summarily dismiss Plaintiffs' redhibition claims against Sportsman's Guide and Northern Tools, the Motion is **DENIED**.

**IT IS FURTHER ORDERED** that, to the extent Defendants move for this Court to find that the defect was apparent to Plaintiffs at the time of the sale, the Motion is **DENIED**.

**IT IS FURTHER ORDERED** that, to the extent Defendants move for this Court to find that Plaintiffs did not provide Sportsman's Guide and Northern Tools with notice and an opportunity to repair, the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that, to the extent Defendants move to dismiss redhibition claims for personal injury damages or attorney fees against Sportsman's Guide and Northern Tools, the Motion is **GRANTED**. Plaintiffs' recovery is limited to a return of the purchase price, plus interest, and any reasonable expenses occasioned by the sale.

MONROE, LOUISIANA, this 18th day of June 2024.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE